**In re Kenneth M. WING, Annette T. Wing, Debtors.**

**Bankruptcy No. 86–264–BKC–6P1.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

July 17, 1986.

T. Kevin Knight, Orlando, Fla., for debtors.

John A. Baldwin, Fern Park, Fla., for Liberty Nat. Bank.

Nancy Alley, Altamonte Springs, Fla., for David Keyser.

James Fly, Orlando, Fla., for Barnett Bank of Central Florida.

Robert Worman, Orlando, Fla., for Freedom Sav. and Loan.

ORDER SUSTAINING OBJECTIONS TO SALE OF RED BUG POINTE PROPERTY AND DENYING DEBTOR'S MOTION TO TRANSFER LIENS TO OTHER SECURITY

GEORGE L. PROCTOR, Bankruptcy Judge.

On April 10, 1986, debtors filed a Report and Notice of Sale expressing their intent to sell a section of their Red Bug Pointe property to Brashk, Ltd., for $685,000, which sale would be consummated if no written objections were received within 20 days from the date of the notice. The Red Bug Pointe property is a parcel of approximately 29 acres of real property which is zoned residential. Although not partitioned, debtors treat this property as two separate parcels: one encompassing 12 acres zoned residential and the other encompassing 17 acres which debtors are trying to have rezoned as office professional.

Contemporaneously with filing the Report and Notice of Sale, debtors filed a motion to transfer all liens against the Red Bug Pointe property to the extent they encumber the 12 acres to the remaining acreage and net proceeds. The liens are held by Freedom Savings & Loan Association, David Keyser, Trustee, Barnett Bank of Central Florida, Briskey & Associates, Larry Dunn and Keewin Co. in the aggre-

gate amount of approximately $1,613,-570.24.

From the $685,000 proceeds, debtors intended to pay $10,000 for a brokerage commission and $524,000 to David Keyser, Trustee, and $76,000 to Freedom Savings & Loan Association to reduce the first priority mortgages. Also, debtors stated their intent to escrow $75,000 for payment to lienholders through the plan of reorganization.

On April 22, 1986, David Keyser, Trustee, objected to both the sale of the property to Brashk, Ltd., and to the motion to transfer liens stating that: (1) this transaction impaired his rights since junior lienholders receive partial payment before the first priority lienholders are paid in full and (2) the value of the remaining acreage is in dispute especially since it has not yet been rezoned office professional. Freedom Savings & Loan Association joined in the objection also stating that debtors had inaccurately valued the subject property and that the sale should not be authorized prior to the time debtors submit their proposed plan of reorganization. The objections were set for hearing on May 28, 1986.

Before the hearing on the objections could be held, the sale to Brashk, Ltd., fell through. Debtors then filed a second Report and Notice of Sale this time stating their intent to sell the entire Red Bug Pointe property as two separate parcels. Debtors propose to sell the 12–acre portion to Larry Godwin, Trustee, for $600,000 and the 17–acre portion to Steven M. Van Ore for $600,000. From the $1.2 million proceeds, debtors intend to pay $25,000 for a brokerage commission; $20,000 for a real estate consultant fee; $577,000 principal plus interest to David Keyser, Trustee; $623,000 to Freedom Savings & Loan Association; $200,000 to Barnett Bank of Central Florida; $35,000 to Briskey & Associates; $3,000 to Gordon Survey; and $10,-000 for costs.

Again, Freedom Savings & Loan Association objected to the sales stating that: (1) the proposed distribution of proceeds fails to pay the first lienholders in full prior to distribution to junior lienholders, (2) the property is being sold for less than its fair market value, and (3) the transfer of liens to proceeds impairs the interests of the first priority lienholders.

The issue before the Court must be analyzed in light of 11 U.S.C. § 363(f) which states:

The trustee (or debtor in possession) may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate only if

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Debtors assert various arguments concerning § 363(f)(1)-(4) but rely on subsection (5) to support their position that the Court has authority to approve the sales free and clear of liens. First, debtors assert that subsection (1) voids the third mortgage interest held by Freedom Savings & Loan Association under the equitable doctrine of marshaling assets since Freedom's interest is also secured by the property, H.P. Cassidy's. Second, they assert that subsections (2) and (3) apply to the first lienholders, Freedom Savings & Loan Association and David Keyser, Trustee, since the proceeds from sale will be sufficient to pay these creditors in full. The first lienholders should be "deemed" to have given their consent. Third, they assert that subsection (4) applies to the third priority interest held by Freedom Savings & Loan Association since debtors believe there is a bona fide dispute as to whether

Freedom must first seek recovery from the H.P. Cassidy's property.

There is no evidence before the Court to support debtors' contentions. Debtors cannot use a circuitous, piecemeal approach to satisfy the requirements of § 363(f). The determination of the extent of a creditor's rights or interest in estate property must be decided in the context of an adversary proceeding, not as an ancillary issue in a motion hearing. See Bankruptcy Rule 7001. Also, in order for the court to authorize a sale free and clear of liens pursuant to § 363(f)(3), the purchase price must exceed the *total* value of all liens or claims against the property, not just the liens of the first priority lienholders. See *Matter of Stroud Wholesale, Inc.*, 47 B.R. 999 (E.D.N.C.1985); *In re Red Oak Farms, Inc.*, 36 B.R. 856 (Bkrtcy, W.D.Mo.1984).

Subsection (5) authorizes sale of property free and clear of liens if the lienors can be compelled to accept a money satisfaction for their liens. 11 U.S.C. § 363(f)(5). The question of whether subsection (5) can be applied in this case turns on the interpretation of "money satisfaction." If *full* money satisfaction is required then the sale cannot be approved free and clear of liens since the aggregate claims against the property exceed $1.6 million and the total selling price is only $1.2 million. If equitable considerations dictate then the court may approve a sale free and clear of liens even though the creditors receive less than full satisfaction of their interests. See *Stroud, supra.; In re Hunt Energy Co., Inc.*, 48 B.R. 472 (Bkrtcy, N.D.Ohio 1985); and *In re Hatfield Homes, Inc.*, 30 B.R. 353 (Bkrtcy, E.D.Pa.1983).

There are no compelling equitable considerations in this case to warrant the Court forcing creditors to accept less than full money satisfaction for their liens outside the plan of reorganization. These proposed sales are liquidation sales outside the ordinary course of business. Once the property is sold, the claimants must look to the proceeds for payment since no likekind property will be substituted. An emergency situation does not exist except to the extent that the Court granted the first lienholder, David Keyser, trustee, relief from the automatic stay to proceed with his foreclosure action but not foreclosure sale.

The proposed sales are of no benefit to the estate. The property is encumbered in excess of its value and represents a net burden to the estate. The estate could even be burdened with the costs of sale if the court did not find that the costs incurred benefited the secured creditors. See 11 U.S.C. § 506(c).

There is no question that the $1.2 million purchase price may represent more than will be bid at a foreclosure sale but there is no evidence to support this contention or to show that the $1.2 million is the highest and best price that could be obtained. Further, debtors cannot even guarantee that they will receive $1.2 million for the property since the sale to Steven M. Van Ore is contingent upon the 17–acre portion being rezoned office professional which still has not occurred.

Accordingly, the Court sustains the objections to sale of the Red Bug Pointe property and denies debtors' motion to transfer liens to other security.