**In the Matter of WPRV–TV, INC., Debtor.**

**Civ. No. 91–02276(GG).**
**Bankruptcy No. 89–02453.**

United States District Court,
D. Puerto Rico.

Dec. 19, 1991.

Charles A. Cuprill–Hernández, Ponce, P.R., for Ponce Federal Bank, appellant-appellee.

García–Arregui & Fullana, Andrés García Arregui, Isabel M. Fullana, Santurce, P.R., for Ponce Federal Bank, F.S.B.

Carlos A. Piovanetti Rivera, Hato Rey, P.R., for Puerto Rico Family Channel, appellant-appellee.

García & Fernández, Edgardo Muñoz, Hato Rey, P.R., for trustee Evangelina Vives.

Ivonne Aguilú, San Juan, P.R., for Puerto Rico Telephone Co.

Alejandro Alveira, Hato Rey, P.R., Asst. U.S. Trustee.

Lillian Mendoza, Santurce, P.R., for Autoridad Energía Eléctrica.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

This court has before us trustee's motion for authority to sell estate assets under § 363 of the Bankruptcy Code[1] and Ponce Federal Bank, FSB's ("Ponce Federal") opposition thereto. After holding a hearing on November 12, 1991 and examining the record before us, we issue the following opinion overruling Ponce Federal's objection and approving the sale proposed by the trustee.

## I. FACTUAL AND PROCEDURAL INTRODUCTION

The voluntary bankruptcy petition upon which this case was commenced was filed by WPRV–TV, INC. ("debtor") with the U.S. Bankruptcy Court for the Eastern District of Oklahoma. After unsuccessful attempts at reorganization under Chapter 11, the case was converted for liquidation under Chapter 7 and transferred to this district by the Oklahoma court.

Chief U.S. Bankruptcy Judge Enrique S. Lamoutte presided over the case until October 10, 1991, when Judge Lamoutte disqualified himself and transferred the case to the District Court, since Bankruptcy Judge Sara de Jesus had prior ties to one of the law firms involved. The case was then assigned to this court.

The trustee made various efforts to sell the estate's assets including holding a public auction on September 30, 1991. The trustee did not recommend any of the auction offers, but recommended a private sale pursuant to another offer received after the auction. The trustee issued notice pursuant to § 363(b) and Rule 6004, Federal Rules of Bankruptcy Procedure, and requested approval to conduct said sale free of liens under § 363(f).

Ponce Federal was the only party to oppose the sale. The hearing's focus was on whether the private sale should be approved over Ponce Federal's objection. We

---

1. Unless otherwise stated, all statutory references correspond to the Bankruptcy Code (11 U.S.C.).

rule that the private sale should be approved. We make the following:

## II. FINDINGS OF FACTS

1. WPRV–TV, INC. filed for bankruptcy under Chapter 11 on December 3, 1987 in the United States Bankruptcy Court for the Eastern District of Oklahoma (Case No. 87–01393).

2. A June 6, 1989 Order by the Oklahoma Bankruptcy Court converted debtor's Chapter 11 petition to a Chapter 7 case and transferred it to Puerto Rico for final liquidation.

3. Upon transfer, Evangelina Vives was appointed operating and liquidating trustee of debtor's assets. The trustee assumed all administrative powers of the station, maintaining its operation to preserve the going concern value and the FCC transmission license.

4. The trustee held a public auction on September 30, 1991.

5. At the auction Ponce Federal offered to purchase all estate assets for a total price of $4,850,000.00. This was not a cash offer, but a bid of $4,800,000.00 credit plus $50,000 cash.

6. The trustee did not recommend any of the auction offers [2].

7. The Puerto Rico Family Channel, Inc. made a bid after the auction, which the trustee recommended as beneficial to the estate.

8. The trustee jointly filed the October 23rd notice of private sale and a motion to sell property free of liens. The proposed sale was comprised of the following:

A. Real Property described in the registry of property as follows:

RUSTICA: Solar # 10–11 de la Río Piedras Industrial Development, situado en Sabana Llana en el Barrio Río Piedras de la Ciudad de San Juan, con un area de 8,839.87 metros cuadrados, en lindes por el Norte, con la acera y franja de terreno de 2.50 metros de ancho que lo separa de la Calle # 10 de dicho proyecto; por el Sur, en 79.48 metros con la parcela # 9 de la de Río Piedras Industrial Development; por el Este, en 110.02 metros con la acera y una franja de terreno que mide 3.50 metros de ancho y la separa de la Avenida Industrial (hoy Simón Madera); y por el Oeste, en 110.03 metros con terrenos de Edelmiro Martínez Rivera.

Se forma por agrupación de las fincas # 3435 y 2811 inscritas a los folios 211 y 63 de los tomos 82 y 70 de Sabana Llana.

Inscrita al folio 131 del tomo 730 de Sabana Llana, finca # 29,451 inscripción 1ra.

B. Some of the equipment subject to liens held by Ponce Federal Savings Bank, listed in *Exhibit C* of the notice of sale.

C. All other equipment owned by the estate, but not subject to any of the liens held by Ponce Federal.

D. Going concern value of the TV Station.

The trustee recommended the following offer made by the Puerto Rico Family Channel, Inc.

A. Real property described above.....................................$2,000,000.00.
B. Equipment subject to Ponce Federal's lien .........................$ 280,500.00.
C. All other equipment ..............................................$ 300,000.00.
D. Going concern value ..............................................$2,250,000.00.

  Total price ......................................................$4,830,500.00.

---

**2.** Three parties made offers at the auction, but by the November 12th hearing only Ponce Federal's bid was still outstanding.

9. After due notice[3], Ponce Federal filed the sole objection to the sale and only opposition to the request to sell free of liens.

10. No one else at the hearing objected to the proposed sale, and several major creditors stated they favored the sale.[4]

11. The private sale, as itemized in trustee's notice, will benefit the estate's unsecured creditors for at least, $2,438,-750.00.[5] The private sale's price represents the best price obtainable under the circumstances, which have included sustained sales efforts and a public auction. We find that such price reflects the fair market value of the assets being sold.[6]

12. Ponce Federal's auction bid would only benefit the estate in its $50,000.00 cash component, and then, only theoretically since Ponce Federal has repeatedly claimed a super priority of $48,021.00.

13. At the hearing, Ponce Federal made another credit bid of $2,000,000.00 for part of the equipment encumbered by its lien. Since it was a credit offer and not a cash bid, it is subject to the same analysis in terms of benefit to the estate as the other credit bid.

14. Ponce Federal failed to prove the extent of its secured interest in the property being sold since they failed to submit any evidence on the current value of specific items of collateral.[7]

15. The Puerto Rico Family Channel, Inc. stated they would not modify their offer, to exclude any items of equipment listed in its offer which are purportedly subject to liens by Ponce Federal.

Applying the law to the facts as found, we make the following:

## III. CONCLUSIONS OF LAW

A. The proposed private sale may be approved free and clear of liens pursuant to §§ 363(f)(3) and (f)(5) of the Bankruptcy Code.

B. The proposed sale provides adequate protection to lien holders since liens attach to sale proceeds, and the sale's price represents fair market value.

C. Ponce Federal has not presented a valid objection to confirmation of the private sale proposed by the trustee.

## IV. DISCUSSION

Ponce Federal's objections are the following:

a. That the sale of property subject to liens may not be approved free of liens under § 363(f)(3) unless equity remains for the estate after covering all the monetary amounts secured by liens;

b. That the sale may not be approved under § 363(f)(5) unless all lien holders receive full money satisfaction on claims;

c. That the sale should not be approved in light of their bids.

---

**3.** Rule 2002(a), FRBP, requires a twenty (20) day notice to creditors and parties in interest.

**4.** Appearances in favor of the sale were: Alejandro Oliveras, Assistant U.S. Trustee; Ivonne Aguilu, Esq. for the Puerto Rico Telephone Co.; Lillian Mendoza, Esq. for the Puerto Rico Electric Power Authority; Antonio Fiol Matta, Esq. for the Commonwealth of Puerto Rico (Treasury Department) and Hector Nicolau, pro se.

**5.** Lots C and D alone represent the following unencumbered proceeds for the estate:

Lot C:      $ 188,750.00      (net from gross receipt of $300,000 offset by $111,250.00 lien in favor of The First National Bank of Tulsa)

Lot D:      $2,250,000.00

Total:      $2,438,750.00

(Notice of Private Sale, at pgs. 2 and 3.)

**6.** See discussion of § 506 valuation, at pages 321–323, infra.

**7.** Ponce Federal relied upon an Order entered by the Oklahoma Court. Their reliance is ill placed, and factually insufficient for determining the current value of the individual pieces of

■ The Bankruptcy Code designates the trustee as the representative of the estate.[8] The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property.[9] Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.[10] As one treatise notes:

"The fact that the ... time, place or manner of sale or the choice of items to be sold may not be right or that the price is inadequate would be possible reasons to object [to the sale] but even as to the latter, the court is likely to be reluctant to substitute its business judgment for that of the debtor in possession or trustee." [11]

The proposed private sale is the most beneficial to the estate. All competing offers have been withdrawn, except for Ponce Federal's, which consists primarily of credit. Those credit bids would produce practically no benefit for any other creditor. (See Findings of Facts 11–13). The only issue remaining is whether the sale should be approved over Ponce Federal's objections.

## SALES FREE AND CLEAR OF LIENS SECTION 363(f)(3) & (5)

■ The trustee has requested approval of the sale of assets free of liens, pursuant to § 363(f) of the code. The right to sell property free of liens has long been a part of the bankruptcy power and dates back to the historic general equity powers of courts, as noted by Justice Brandeis in *Van Huffel v. Harkelrode*, 284 U.S. 225, 227–228, 52 S.Ct. 115, 116–117, 76 L.Ed. 256 (1931); *See also* Cowans, *Bankruptcy Law and Practice*, § 11.9 pg. 412 (West Publishing Co., 1989). Sales may be made free of liens without first determining the rights in the proceeds. *In re Saco Local*

*Development, Corp.*, 19 B.R. 119, 121 (1st Cir. BAP 1982).

§§ 363(f)(3) and (5) of the Bankruptcy Code reads:

(f) The trustee may sell property ... free and clear of any interest in such property ... if—

\*　\*　\*　\*　\*　\*

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; ... or

\*　\*　\*　\*　\*　\*

(5) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

The trustee is not proposing the sale of all assets encumbered by Ponce Federal, but a sale of one realty subject to two mortgages with Ponce Federal, and specific pieces of equipment or fixtures which may form part of the chattels serving as collateral. A large part of what might comprise collateral of their chattel mortgages is not being sold, and should not be considered in the proposed action. The portion of Ponce Federal's interest that would attach to the sale proceeds is only that secured by the specific property being sold free of liens.

Ponce Federal objects to the proposed sale based on a highly criticized and unduly strict interpretation of the Bankruptcy Code. Ponce Federal relies on *In re Stroud Wholesale, Inc.*, 47 B.R. 999 (E.D.N.C.1985), and *In re Wing*, 63 B.R. 83 (Bankr.M.D.Flor.1986), (*Wing* merely cites without further analysis the opinion of *Stroud*).

The *Stroud* court interpreted § 363(f)(3)'s language, "aggregate value of all liens", and equated it with the stated dollar amount of the debt secured by the lien regardless of the real economic value

---

8. See § 323 of the Bankruptcy Code (11 U.S.C. § 323) and Rule 6009, F.R.B.P. Unless otherwise indicated, all textual references to sections and rules correspond to the Bankruptcy Code and Federal Rules of Bankruptcy Procedure respectively.

9. See § 363.

10. *In re WFDR, Inc.,* 10 B.R. 109 (Bankr.N.D.Ga. 1981) Cowans, Bankruptcy Law and Practice, § 11.9 pg. 419–420 (West Publishing Co., 1989).

11. Cowans, supra, pg. 417.

property proposed to be sold by the trustee. See discussion, at pages 321–323, infra.

of said liens. *Stroud* concluded that sales are not allowed under § 363(f)(3) unless some equity is produced for the estate. *Stroud* is factually distinguishable from our case since the court there dealt with the sale of a entire piece of property that was the subject of a secured claim. The private sale here includes the sale of individual items from a larger group of property which, in its entirety, served as security for the lien.[12] *Stroud*'s analysis has been widely criticized [13] and was expressly rejected in *In re Beker Industries Corp.*, 63 B.R. 474 (Bankr.S.D.N.Y.1986). *Beker* in contrast has been followed in subsequent well-reasoned opinions.[14]

■ The *Beker* opinion, which we decide to follow, presents the following analysis of § 363(f)(3).

The "starting point" in the exercise of statutory construction is the language of the statute itself. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). Section 363(f) provides for sales over the objection of secured creditor only under certain conditions, two of which are in issue here:

(3) ... the price at which such property is to be sold is greater than the aggregate *value* of liens on such property;

\*    \*    \*    \*    \*    \*

It is well settled that in construing statutory language, terms of particular meaning to the subject matter of the statute are to be interpreted in line with that meaning, *Ernst & Ernst v. Hochfelder*, 425 U.S. at 199, 96 S.Ct. at 1383, and in light of other provisions of the statute. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 734, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1979).

Here, the term *"value"* has such meaning. That term is employed in the same context in § *506(a)*. There it is provided that

An allowed claim of a creditor secured by a lien on property [of the estate] ... is a secured claim to the extent of the *value* of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the *value* of such creditor's interest ... is less than the amount of such allowed claim. Such *value* shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(emphasis added). It is thus plainly indicated that the term *"value"*, as used in § 506(a) with respect to the interest of a secured creditor, means *its actual value* as determined by the Court, as distinguished from the amount of the lien. That indication and the last sentence of

**12.** Cf. *In re 18th Avenue Development Corp.* 14 B.R. 862 (Bankr.S.D.Flor.1981) (§ 363(f)(3) allows the sale of less than the full amount of lots serving as collateral for a security interest, and does not require the full monetary amount of the secured lien on all the property to be realized from such sale).

**13.** *In re Beker Industries Corp.* 63 B.R. 474, 476 n. 1 (Bankr.S.D.N.Y.1986), 64 B.R. 890 (Bankr.S.D.N.Y.1986), 64 B.R. 900 (Bankr.S.D.N.Y. 1986), 69 B.R. 937 (Bankr.S.D.N.Y.1987), 89 B.R. 336 (S.D.N.Y.1988) (*rev'g in part* 64 B.R. 900), ("... this equating of value and amount is a non-sequitur ... A further weakness in *Stroud* is its citation of *Matter of Riverside Investment Partnership*, 674 F.2d 634, 640 (7th Cir.1982) for a 'well established' hard rule. As noted *infra,* that case speaks of only a 'general rule'."); *International Union, (UAW) and its Lo-*

*cal 982 v. Morse Tool Inc.*, 85 B.R. 666, 668 n. 5 (D.C.Mass.1988) ("It is to be noted that the reasoning in *Stroud* has been severely criticized ..."); *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 712 (Bankr.W.D.Tex.1989) ("Focusing solely on the amount of the debt securing the liens ... ignores the Code's focus on protecting the value of collateral, thereby allowing an undersecured creditor to obstinately block an otherwise sensible sale. That result is also inconsistent with Section 363(k), which allows a secured creditor to bid in the amount of its debt anyway, to prevent a sale over its objection for less than what it is owed.")

**14.** "This court believes that *Beker* is the better reasoned view." *In re Terrace Gardens Park Partnership* 96 B.R. at 713; *International Union,* supra; *In re Oneida Lake Development Inc.*, 114 B.R. 352, 356–357 (Bankr.N.D.N.Y.1990).

§ 506(a) requiring determination of value upon disposition of an asset standing as collateral strongly support the conclusion that the term "value", as employed in § 363(f)(3) is to be similarly interpreted. *Beker,* 63 B.R. at 475–476.

*Beker* recognizes that there is usually no reason to sell an asset subject to a lien free of such lien where the estate has no equity. *Beker* calls for an inquiry into the existence of special circumstances justifying the sale. 63 B.R. at 477. Special circumstances exist here since the proposed sale of the encumbered assets furthers the sale of other assets at an enormous benefit for the estate. (See Finding of Fact 11) This is a situation like *In re Hatfield Homes, Inc.,* 30 B.R. 353, 355 (Bankr.E.D.Pa.1983) where the "proposed sales price is the best price obtainable under the circumstances of a particular case ...", and *Beker* at 476, 477.

Even under the strict interpretation of § 363(f)(5) urged by *Stroud* and *Wing,* this court should approve the proposed sale since, "If equitable considerations dictate then the court may approve a sale free and clear of liens even though the creditors receive less than full satisfaction of their interests." *In re Stroud,* 47 B.R. at 1003; and *In re Wing,* 63 B.R. at 85.

■ § 363(f)(5) permits the sale of property free of liens if the lien holder can be compelled to accept a money satisfaction. *Stroud* interpreted the money satisfaction requirement as *"full* money satisfaction" in liquidation cases. *Stroud* at 1003. This interpretation is inconsistent with requirements imposed for money satisfactions in other sections of the Bankruptcy Code. § 1129 of the Code permits retention of property by debtor and the cram-down of objecting creditors upon payment of the *actual value* of the collateral. Several courts have concluded. that sales can be upheld without full satisfaction of the claim, even without showing special circum-

stances.[15] Since the properties here are to be sold for the best price obtainable under the circumstances, and the liens will attach to the sale proceeds, the proposed sale may be approved.

## SECTION 506 VALUATION

§ 363(*o* ) of the Bankruptcy Code states:

In any hearing under this section—
(1) The trustee has the burden of proof on the issue of adequate protection; and
(2) The entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

§ 361 of the Code provides illustration of various methods of providing adequate protection to creditors. § 361(3) states that adequate protection may be afforded by giving the creditor the "indubitable equivalent" of its interest. This "indubitable equivalent" is contemplated here since the liens will attach to the sale proceeds. The legislative history makes clear that "the most common form of adequate protection will be to have the interest attach to the proceeds of the sale".[16]

■ To assess the value of its security interest in the property proposed to be sold, Ponce Federal relied upon the Oklahoma Bankruptcy Court's 1988 determination under § 506 of the Bankruptcy Code. The Oklahoma court's August 24, 1988 ORDER VALUING SECURED CLAIM failed to make any determination as to the value of the specific items composing Ponce Federal's collateral. The court there merely restates the general proposition found in § 506 of the Code that the secured claim of Ponce Federal will have a value equivalent to the amount owed "until such time as its total secured claims shall be equal to the total value of the collateral securing such claims". Nowhere in the record before us is any determination of value by the Oklahoma Court based on evidence of the value

---

**15.** *In re Weyland,* 63 B.R. 854, 859–861 (Bankr. E.D.Wisc.1986); *In re Red Oak Farms Inc,* 36 B.R. 856, 858 (Bankr.W.D.Mo.1984); and *In re Hunt Energy Co., Inc.* 48 B.R. 472, 485 (Bankr. N.D.Ohio 1985).

**16.** Collier on Bankruptcy, § 363.07, at 363–33 n. 6; citing H.R.REP. No. 595, 95th CONG., 1ST Sess. 345 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6302.

of the different properties comprising the collateral. Nor have we been advised of any adversary proceeding being filed pursuant to § 506 as required by Rule 7001, FRBP.

Even if a true determination of the value of the properties securing Ponce Federal's liens was made in 1988, such valuation would not be etched in stone. § 506 provides that value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property. Although a 1988 determination of value may have been proper for evaluating what adequate protection should have been afforded at that time, the secured amount of an allowed claim may change during the course of the bankruptcy case.[17]

Specifically on this point, Collier states: The extent to which an allowed claim constitutes a secured claim may vary during the course of a bankruptcy case. The principal causes of such potential variance are (a) payments during the courses of the bankruptcy case in reduction of a secured claim and (b) fluctuations in the value, and changes in the applicable method of valuation pursuant to the second sentence of section 506(a) of the subject collateral.

*Collier on Bankruptcy,* (Matthew Bender, 15th Ed.), § 506.04, at 506–21 and cases cited at 506–25, n. 22.

Thus, *the amount of the creditor's claim which is a secured claim in accordance with section 506(a) may be lower at the end of the case,* when treatment of such claim may be at issue, than the amount of such claim that constituted a secured claim at the commencement of the case.

Id., at 506–22 (emphasis added).

A determination of the amount of a secured claim in one aspect of a bankruptcy proceeding is not necessarily *res judicata* in other aspects of that proceeding.

Id., at 506–25, n. 23, citing *Fairchild v. Lebanon Production Credit Association,* 31 B.R. 789, 795 (Bankr.S.D.Ohio 1983).

■ We must conclude in the absence of any more current or specific evidence presented by Ponce Federal as to the value of their interest, that the proposed cash offer for the items purportedly encumbered by Ponce Federal represents the best price obtainable under the circumstances, and the most reliable source for determination of actual value. In this same vein, Collier states:

If an actual disposition is to occur, regardless of the purpose of the valuation, the value of the collateral should be based on the consideration to be received by the estate in connection with the disposition, provided that the court determines such consideration is fair and was arrived at on an arm's-length basis.

Collier, supra, at 506–27, n. 28 and n. 28a.

Assuming arguendo that the Oklahoma ruling could be of assistance now in determining the value of collateral, its worth is further limited since the court there refers to Ponce Federal's claims as a single unit with a single value. The trustee proposes to sell only a portion of the collateral referred to in the Oklahoma Order, and Ponce Federal has provided no evidence as to what proportion of the value of their secured claim should attach to the specific items to be sold.

■ At the November 12th hearing Ponce Federal bid its credit up to a stated amount of $2,000,000.00. The tendering of this credit bid by the creditor falls far short of meeting their burden of proof as to the true value of their secured interest under § 363(*o*)(2). Since there is no bidding process to evaluate in the context of a private sale, it is questionable whether the right of a creditor to bid under § 363(k) even applies here. On this point, Collier comments:

Subsection (k) permits a right of offset if the creditor purchases property at a sale under subsection (b), *but there is no guarantee that the sale will be a public sale.*

Collier, supra, at § 363.12, at 363–41.

■ The § 363(k) right to bid is not equivalent to the § 363(h) right of first

17. Collier on Bankruptcy, § 506.04 at 506–21.

refusal given co-owners of property sold by a trustee.

### V. CONCLUSION

This court concludes that Ponce Federal's objection to the sale should be and is hereby, OVERRULED. It is further ORDERED that the private sale proposed by the trustee should be and is hereby, CONFIRMED. The sale shall be free and clear of liens and any existing and valid liens shall attach to the proceeds.

It is further ORDERED that the *Motion Requesting Order To Show Cause Why the Option (SIC) Held On September 30, 1991 Should Not Be Adjudicated To Ponce Federal, etc.* be, and is hereby, DENIED.

The Clerk of the Court shall enter judgment accordingly.

SO ORDERED AND ADJUDGED.