In re TERRACE CHALET
APARTMENTS, LTD.,
Debtor.

Franz SCHERER and Isle B.
Scherer, Appellants,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, Appellee.

No. 93 C 2621.
Bankruptcy No. 92 B 18070.

United States District Court,
N.D. Illinois, E.D.

Oct. 12, 1993.

Weissberg & Associates, Chicago, IL, for appellants.

Foley & Lardner, Chicago, IL, for appellee.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

On June 16, 1993, the Appellants, Franz and Ilse Scherer, appealed to this court to challenge a bankruptcy court's order authorizing the sale of an asset in which the Scherers have a security interest. The Scherers argue the bankruptcy court erred because it did not condition the sale upon compliance with state foreclosure law. In the alternative, they argue the bankruptcy order violates Section 363(f) of the Bankruptcy Code. The Appellees, Terrace Chalet Apartments and the Federal National Mortgage Association, argue that the sale need not comply with state law. They further argue that the Scherers waived their right to contest the validity of the bankruptcy order under Section 363(f). Finally, they contend the sale is excepted from Section 363(f) under 363(f)(3), 363(f)(4) and/or 363(f)(5). For the reasons set forth in this opinion, the bankruptcy order is remanded for further consideration consistent with this decision.

### I. STATEMENT OF FACTS

This appeal is taken from the order entered by the bankruptcy court on April 9, 1993 (the "Order") in the Chapter 11 proceedings of Terrace Chalet Apartments, Ltd. ("Terrace Chalet"). The Order allows for the auction of Terrace Chalet's sole asset, a 180–unit apartment complex known as Camelot Arms.

In October 1984, Terrace Chalet purchased Camelot Arms for $4,250,000 from the Scherers. The Scherers loaned Terrace Chalet $1,050,000 and secured the loan by

taking a second mortgage against the property. The Appellee, the Federal National Mortgage Association ("Fannie Mae") holds the first mortgage against the property. After defaulting on both of these mortgages, Terrace Chalet filed for Chapter 11 reorganization on August 13, 1992. As debtor-in-possession, Terrace Chalet is the bankruptcy trustee.

In January of 1993, Fannie Mae moved the bankruptcy court to lift the automatic stay [1] and to allow Fannie Mae to foreclose on its mortgage; Fannie Mae contended its interest in the Camelot Arms was not adequately protected. In February of 1993, the bankruptcy court began to conduct hearings on the issue. At the March 4th hearing, Terrace Chalet and Fannie Mae advised the court they had successfully negotiated a settlement agreement the previous night. The court therefore adjourned the hearings on adequate protection.

According to the proposed agreement, Fannie Mae would attempt to sell its interest in Camelot Arms to a third party for $4,200,000. If Fannie Mae was unable to consummate such a purchase before February 14, 1994, Terrace Chalet would sell the property at a public auction on March 7, 1994 pursuant to Section 363(b) of the Bankruptcy Code.

The proposed settlement agreement further provided that the sale of Camelot Arms at the auction would extinguish the Scherers' security interest. The Scherers filed written objections with the bankruptcy court, and the bankruptcy court heard oral arguments regarding the settlement agreement. The court decided the sale did not violate Section 363(f) and adopted the settlement agreement as a bankruptcy order.

## II. DISCUSSION

Section 363 of the Bankruptcy Code provides in pertinent part:

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate....

(f) The trustee may sell property under subsection (b) ... of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363 (1993).

### 1. Whether a Sale Under Section 363 Must Comply With State Foreclosure Law

The Scherers argue that the bankruptcy court erred by failing to condition the trustee's sale of Camelot Arms upon compliance with the procedural requirements of Wisconsin foreclosure law. However, the Bankruptcy Rules—not state law—provide the procedural requirements with which a bankruptcy trustee must comply. The Rules expressly provide that the trustee need only give 20 days notice to sell property pursuant to Section 363(b). FED. R.BANKR.P. 2002(a)(2). The Rules further provide that such a sale may be private or by public auction. FED.R.BANKR.P. 6004(f)(1). Because the United States Supreme Court has established these requirements, it is specious for the Scherers to argue that a trustee must comply with the requirements of Wisconsin foreclosure law. Indeed, the Scherers have cited no statutory authority for this proposition. Moreover, the Scherers have not presented this court with any cases which have interpreted Section 363(b) as requiring compliance

---

1. The filing of the bankruptcy petition activates an "automatic stay." 11 U.S.C. § 362. The stay prevents creditors from taking any action to pursue their claims against either the debtor or the bankruptcy estate. Id.

with state foreclosure law. Rather, courts have consistently acknowledged, "[T]he manner of sale is within the discretion of the Trustee...." *E.g., Berg v. Scanlon (In re Alisa Partnership)*, 15 B.R. 802, 802 (Bankr.D.Del.1981); *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr.S.D.Cal. 1985). Therefore, the bankruptcy court did not err in permitting Terrace Chalet to sell the property outside of the constrictions of Wisconsin law.

### 2. *Whether the Scherers Waived their Right to Argue that Section 363(f) Prohibits the Extinguishment of their Lien*

■ The Scherers argue that Section 363(f) invalidates the portion of the Order which provides for the extinguishment of the Scherers' lien. Section 363(f) provides that a sale cannot extinguish a secured party's lien unless one of the five specified exceptions applies. 11 U.S.C. § 363(f)(1)–(5).

■ Fannie Mae asserts the Scherers waived their right to argue that Section 363(f) prohibits the extinguishment of their lien because the Scherers failed to raise the issue before the bankruptcy court. However, "[w]hile it is true that an argument cannot be raised for the first time on appeal, it is also true that a party may attack the legal theory upon which the [lower] court based its decision." *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1194 (7th Cir.1992) (citing *Hedge v. County of Tippecanoe*, 890 F.2d 4, 8 (7th Cir.1989); *Toney v. Burris*, 829 F.2d 622, 626–27 (7th Cir. 1987)).

In *Allison*, the plaintiffs had leasehold interests in property owned by a Chapter 7 debtor. *Id.* at 1190. The bankruptcy trustee was able to sell the property free and clear of the plaintiffs' interests. *Id.* at 1191–92. The plaintiffs sued the insurance title company because the company failed to honor the insurance policies and to defend the plaintiffs' interests. *Id.* at 1190. In its brief on appeal, the insurance company argued it was not liable; it reasoned that the plaintiffs consented to the sale under Section 363(f)(2) because they had

failed to object to it. *Id.* at 1194. The plaintiffs in *Allison* correctly noted that the insurance company failed to even mention Section 363(f)(2) to the lower court. *Id.* The Seventh Circuit Court of Appeals noted, however, that the lower court had held, "[t]here is no law that provides that failure to object renders a ... Settlement Agreement invalid." *Id.* Because the lower court implicitly predicated its ruling upon Section 363(f)(2), the Seventh Circuit held that the insurance company could challenge this determination on appeal, although it had failed to raise the issue previously. *Id.*

Similarly, in their brief to the bankruptcy court, the Scherers neglected to mention Section 363(f); they argued merely that the sale of Camelot Arms fails to provide them "any of the protections afforded by the Bankruptcy Code." Appellants' Objections to "Agreed Order to Provide Adequate Protection to First National Mortgage Association" at 2, No. 92–B–18070 (Bankr.N.D.Ill. 1993), *reprinted in* Record at 18. However, the Order itself provides that Camelot Arms "will be sold free and clear of all liens, claims or encumbrances pursuant to Section 363 of the Bankruptcy Code." Record at 2. Indeed, when it adopted the Order, the bankruptcy court noted, "If we were to go forward with a 363 sale ... your lien could be wiped out entirely." Record at 64. Under *Allison*, because the bankruptcy court explicitly permitted the sale free and clear of the Scherers' lien pursuant to Section 363(f), the Scherers have the right to argue before this court that Section 363(f) does not authorize such a sale. Therefore, Fannie Mae's contention is rejected.

### 3. *Whether the Trustee Can Sell the Camelot Arms Pursuant to Section 363(f)(3)*

■ A sale which extinguishes a lien may proceed under Section 363(f)(3) if the proceeds from the sale of the asset exceed "the aggregate value of all liens" on the property. 11 U.S.C. § 363(f)(3). The federal courts are sharply divided as to the meaning of the term "value of all liens."

Some courts follow the decision of *In re Beker Industries Corp.*, 63 B.R. 474, 477 (Bankr.S.D.N.Y.1986), and hold that "value of all liens" means the actual economic value of the lien. *In re WPRV–TV, Inc.*, 143 B.R. 315, 320 (D.P.R.1991), *judgment affirmed on other grounds*, 983 F.2d 336 (1st Cir.1993); *In re Milford Group, Inc.*, 150 B.R. 904, 906 (Bankr.M.D.Pa.1992); *In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 356 (Bankr.N.D.N.Y.1990); *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 712–13 (Bankr.W.D.Tex.1989). Consequently, these courts hold that Section 363(f)(3) protects only the secured party's equity in the security interest. Thus, if the trustee demonstrates the security interest has no actual value, s/he can sell the secured property free and clear of the security interest.

Other courts, however, hold that "value of all liens" means the face amount of the lien. *In re Stroud Wholesale, Inc.*, 47 B.R. 999, 1002 (E.D.N.C.1985); *In re Heine*, 141 B.R. 185, 189 (Bankr.D.S.D. 1992). Under this view, Section 363(f)(3) protects the entire amount of the secured debt. Thus, the trustee cannot sell the property free and clear of the liens unless the sale proceeds will exceed the amount of the secured debt on the property. Under this interpretation, the sale of Camelot Arms may not extinguish the Scherers' security interest unless it produces enough proceeds to fully compensate the Scherers.

In *dicta*, the Seventh Circuit Court of Appeals has espoused the second interpretation. In *Riverside Investment Partnership*, the Seventh Circuit stated, "[a]s a general rule, the bankruptcy court should not order property sold 'free and clear of' liens unless the court is satisfied that the sale proceeds *will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate.*" *In re Riverside Inv. Partnership*, 674 F.2d 634, 640 (7th Cir.1982) (emphasis in original) (citing *Hoehn v. McIntosh*, 110 F.2d 199, 202 (6th Cir.1940) (stating a court should not authorize a sale unless the sale will produce more than the "amount of the liens"), *Freeman Furniture Factories v.*

*Bowlds*, 136 F.2d 136, 139–140 (6th Cir. 1943) (noting that the lien equalled the amount owed to the secured party and the court should not authorize a sale unless it exceeded this amount), *In re Bernhard Altmann Intl. Corp.*, 226 F.Supp. 201, 205 (S.D.N.Y.1963) (noting "it is settled practice not to order a sale free of liens if it appears that the amount of the encumbrance exceeds the value of the property")). Therefore, the Seventh Circuit has indicated that a bankruptcy court should not authorize a sale free and clear of liens unless the lienholders are fully compensated.

The result reached by the Seventh Circuit in *dicta* accords with Congress' intent in enacting Section 363(f). In discussing Section 363(f), the House and Senate Reports stress that "[t]he trustee may sell free and clear if ... the sale price of the property is greater than the *amount secured by the lien.*" H.R.REP. No. 95–595, 95th Cong., 1st Sess. 345 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6301–02 (emphasis added); S.REP.No. 95–989, 95th Cong., 2d Sess. 56 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5842 (emphasis added). These reports expressly provide that Congress intended Section 363(f) to protect the amount of secured debt, not the actual economic value of the lien.

The Bankruptcy Amendments of 1984 further demonstrate that Section 363(f) does not protect merely the actual value of the lien. Previously, Section 363(f)(3) authorized a sale free and clear of liens if the sale proceeds exceeded the value of the "interests" of secured parties in the property. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 372. In 1984, Congress amended Section 363(f)(3) to authorize a sale if the proceeds exceeded the value of "all liens on the property." *Id.* When Congress intends to denote the concept of "actual value" in the Bankruptcy Code, it consistently refers to the value of the secured party's *interest*. *E.g.*, 11 U.S.C. § 361 (using the phrase "the interest of an entity in property" to express the concept of actual value); 11 U.S.C. § 506(a) (using

the phrase "value of such creditor's interest" to denote actual value); 11 U.S.C. § 1129(a)(7)(B) (using the phrase "value of such holder's interest" to express actual value). Congress *deleted* the language of Section 363(f)(3) that courts have consistently interpreted as denoting actual value. This deletion suggests that Congress intended for Section 363(f)(3) to protect other than actual value.

Further, the reasoning upon which the interpretation in *Beker* is predicated actually buttresses the interpretation in *Riverside Investment Partnership*. The courts that have adopted the interpretation espoused in *Beker* rely upon the "interplay of [Sections] 506(a) and 363(f)(3)." *Beker*, 63 B.R. at 476; *see also, WPRV–TV*, 143 B.R. at 320–21 (citing *Beker*). Section 506(a) defines the amount of a secured creditor's claim as the actual economic value of the security interest. 11 U.S.C. § 506(a). The courts reason that because the term "value" in Section 506(a) denotes actual value, this term must mean actual value in Section 363(f). *Beker*, 63 B.R. at 476; *WPRV–TV*, 143 B.R. at 320–31. However, to express the concept of actual value, Section 506(a) discusses the "value of such creditor's *interest.*" 11 U.S.C. § 506(a) (emphasis added). Section 363(f)(3) discusses the value of the *liens.* As discussed above, because Congress chose to delete the language in Section 363(f)(3) that was similar to that found in Section 506(a), Congress intended that the "actual value" concept of Section 506(a) would not carry over to Section 363(f)(3).

■ The interpretation that Section 363(f)(3) protects more than actual value comports with the axiomatic principle of statutory construction that unless the context dictates otherwise, "terms connected by a disjunctive [should] be given separate meanings." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). Section 363(f) authorizes a sale free and clear of a lien if one of the five exceptions applies. 11 U.S.C. § 363(f)(1)–(5). However, if a court interprets Section 363(f)(3) as protecting only actual value, then Section 363(f)(5) becomes superfluous. For example, in *WPRV–TV*, the court interpreted Section 363(f)(3) as protecting only actual value; it then interpreted Section 363(f)(5) as allowing a sale free and clear of a lien if the secured creditor could be "crammed down"[2] pursuant to Section 1129(b)(2) of the Bankruptcy Code. *WPRV–TV*, 143 B.R. at 321. A trustee can cram down a secured creditor if s/he demonstrates (1) the trustee is not unfairly discriminating against the secured creditor, 11 U.S.C. § 1129(b)(1), (2) s/he is acting in good faith, 11 U.S.C. § 1129(a)(3)–(b)(1), and (3) the secured creditor is receiving *the actual value* of its claim. 11 U.S.C. § 1129(b)(2)(A)(i)(II), 11 U.S.C. § 1129(b)(2)(A)(iii); *see also In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1350 (5th Cir.1989) (holding that "indubitable equivalent" of a secured creditor's interest is the actual value of the claim). However, if a trustee could demonstrate actual value and, consequently, sell the asset under Section 363(f)(3), s/he would not labor to prove the two additional elements needed to sell the asset under Section 363(f)(5). Because an interpretation of Section 363(f)(3) as protecting only actual value renders Section 363(f)(5) superfluous, this court declines to interpret it in such a manner.

■ Moreover, even if this court would agree with the *Beker* line of decisions, the holdings of these cases would not apply to the instant case. The instant case involves the sale of the estate's sole asset. The courts that have permitted a sale free of a secured party's interest have expressly cautioned that such authorization may be inappropriate when the contemplated sale involves the estate's only asset. *Beker*, 63 B.R. at 477 (noting that a court's power to authorize a sale means "little as to its exercise, particularly in the case of a major

---

**2.** "Cram down" is a way for a trustee to confirm a reorganization plan absent creditor consent. In order to confirm a plan, the trustee typically must demonstrate that each class of creditors have accepted the plan. 11 U.S.C. § 1129(a)(8). However, a trustee can "cram down" the plan on dissenting creditors if s/he demonstrates that the three stated requirements are satisfied. 11 U.S.C. § 1129(b).

asset"); *WPRV–TV*, 143 B.R. at 320 (D.P.R., 1991) (distinguishing *Stroud* by noting the trustee in *Stroud* contemplated the sale of the entire estate). Therefore, because Terrace Chalet wishes to sell its only asset, the *Beker* line of decisions would not disturb this court's conclusion.

▉ Finally, it bears noting that the Court of Appeals' statement in *Riverside Investment* is only the "general rule." *Riverside Investment*, 674 F.2d at 640. As aptly noted by the court in *Beker*, a general rule necessarily implies the existence of exceptions. *Beker*, 63 B.R. at 477. However, the Appellees have not explained why the sale in the instant case should be excepted from this general rule. Terrace Chalet wishes to sell the bankruptcy estate's sole asset in derogation of the second position lienholder's mortgage. Fannie Mae argues the sale is necessary to adequately protect its position. *See* 11 U.S.C. § 361. However, the bankruptcy court never made a finding that Fannie Mae needed adequate protection. Moreover, even assuming adequate protection was necessary, Fannie Mae failed to demonstrate that the extinguishment of the Scherers' security interest was necessary to protect Fannie Mae's interest. As noted in the legislative history to the Bankruptcy Code, "[m]ost often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale." H.R.REP. No. 95–595, 95th Cong., 1st Sess. 345 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6302. Fannie Mae did not establish that the traditional forms of adequate protection would fail to protect it.[3] Thus, although exceptions may exist to the general rule promulgated by the Seventh Circuit in *Riverside Investment,* the facts in the instant case do not warrant such a deviation.

Therefore, Section 363(f)(3) simply does not authorize the sale of Camelot Arms free and clear of the Scherers' interest under the terms of the Bankruptcy Court's April 9, 1993 Order.

### 4. *Whether Section 363(f)(4) Authorizes the Sale of Camelot Arms Free and Clear of the Scherers' Interest*

▉ A trustee can sell estate property free and clear of a lien if the lien is in bona fide dispute. 11 U.S.C. § 363(f)(4). The trustee has the burden of establishing the existence of a bona fide dispute. *See, e.g., In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr.N.D.Ill.1991). Fannie Mae argues that because *it* disputes the validity of the Scherers' mortgage, then Terrace Chalet, the trustee, can sell the property free of the mortgage. The case law does not delineate precisely when a dispute between two creditors will constitute a bona fide dispute and consequently allow the trustee to sell the property free and clear of the lien pursuant to Section 363(f)(4). *Compare, Missouri v. United States Bankruptcy Court for the Eastern District of Arkansas*, 647 F.2d 768, 778 (8th Cir.1981) (cautioning a court to "particularly examine its authority to order the sale if title documents indicate that the estate possesses no substantial ownership rights to [the property] and that any bona fide dispute over the property exists only between third parties"), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982), *with In re Gerwer*, 898 F.2d 730, 733 (9th Cir.1990) (holding that a secured party's dispute with a third party will justify a sale if the resolution of the dispute could result indirectly in a depletion of the bankruptcy's estate's assets).

▉ However, these cases address whether a *trustee* can request authorization from a court to sell the property free and clear of a lien when the dispute involves third parties. In the instant case, the trustee, Terrace Chalet, did *not* argue either to the bankruptcy court or to this court that the sale can be authorized under Section 363(f)(4). Indeed, Terrace Chalet did not contend that the Scherers lacked a valid security interest. Rather, in its brief to this court, Terrace Chalet consistently acknowledged the validity of the Scherers'

---

**3.** We need not decide whether or under what conditions a court may authorize a sale that

extinguishes a secured party's lien in order to adequately protect another secured party.

interest. Brief for Appellee–Terrace Chalet, at 3 (referring to the Scherers as "second position lien holders"); *id.* at 4 (asserting in the Statement of Facts "the Scherers loan was secured by a second mortgage on the property"); *id.* at 12 (advising this court that under Section 363(k), the Scherers as "secured creditors" can bid on the property). Because Section 363(f)(4) authorizes a trustee to sell the property if a bona fide dispute exists, it would seem to require at a minimum that the *trustee* believe that a dispute exists. It would be nonsensical for a court to allow the trustee to sell property pursuant to 363(f)(4) when the trustee believes the secured party's interest to be valid. However, the bankruptcy court in the instant case authorized the sale pursuant to Section 363(f)(3) and consequently, did not explicitly rule on the applicability of Section 363(f)(4). Record at 52, 64. Therefore, it is appropriate to remand this case so that the bankruptcy court can decide whether (1) the trustee Terrace Chalet can sell the property free of the Scherers' lien because Fannie Mae disputes the validity of the Scherers' interest and if so, (2) whether Fannie Mae's dispute with the Scherers is bona fide.

**5. *Whether the Sale Free and Clear of the Scherers' Lien Can Be Authorized under Section 363(f)(5)***

■ Finally, the Appellees urge that the sale will extinguish the Scherers' lien because the Scherers "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). The federal courts have espoused two interpretations of Section 363(f)(5). Some courts interpret this provision as meaning that the trustee must pay the full amount of the secured party's lien, unless "equitable considerations" will justify lien extinguishment upon realization of less than the full amount of the secured debt. *In re Wing,* 63 B.R. 83, 85 (Bankr. M.D.Fla.1986); *In re Stroud,* 47 B.R. at 1002–04; *In re Heine,* 141 B.R. at 189–190. Other courts authorize the sale and consequent lien extinguishment if the creditor could be crammed down pursuant to Section 1129(b)(2). *WPRV–TV,* 143 B.R. at

321; *In re Weyland,* 63 B.R. 854, 860–61 (Bankr.E.D.Wi.1986); *In re Hunt Energy Co.,* 48 B.R. 472, 485 (Bankr.N.D.Ohio 1985); *In re Red Oak Farms, Inc.,* 36 B.R. 856, 858 (Bankr.W.D.Mo.1984). This court adopts the latter interpretation.

■ First, the clear statutory language suggests a Section 1129(b)(2) cram down. Section 363(f)(5) permits a sale free and clear of a lien if the creditor could be "compelled" to accept a monetary satisfaction of the claim. 11 U.S.C. § 363(f)(5). In a cram down, a creditor is compelled to accept monetary satisfaction of her claim and the consequent extinguishment of her lien. *In re James Wilson Ass'n,* 965 F.2d 160, 172 (7th Cir.1992).

Further, the decisions that require full satisfaction absent a showing of equitable consideration fail to capture the essence of Section 363(f)(5). As discussed *supra,* Section 363(f)(3) addresses *how much* a trustee must pay a secured creditor to extinguish the lien. Section 363(f)(5) would repeat Section 363(f)(3) if it were interpreted merely to require a specific amount of money that the trustee could pay in order to sell the property free and clear of a lien. By its express terms, Section 363(f)(5) permits lien extinguishment if the trustee can demonstrate the existence of another legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt. Section 1129(b)(2) cram down is such a provision. Therefore, this court holds that Terrace Chalet can sell Camelot Arms free of the Scherers' lien if it demonstrates it can cram down the Scherers pursuant to Section 1129(b)(2).

■ As discussed above, a trustee must demonstrate good faith to effectuate a cram down. It is important to emphasize the good faith requirement. In the instant case, Terrace Chalet filed for reorganization. Although reorganizing, it seeks to sell the sole asset of the estate and to accomplish this sale by extinguishing the Scherers' lien. Because the estate will no longer contain any property, it is not clear how Terrace Chalet intends to reorganize or to make a good faith effort to remuner-

**830**

ate the Scherers. Because (1) Terrace Chalet's reorganization seems problematic and (2) the proposed sale contemplates the sale of the estate's sole asset (3) at the expense of a secured party's lien, the bankruptcy court must carefully consider whether Terrace Chalet is acting in good faith. *See generally, In the Matter of James Wilson Ass'n*, 965 F.2d at 170 (noting "[t]he clearest case of bad faith is where the debtor enters Chapter 11 knowing that *there is no chance to reorganize* ... and hoping merely to stave off the evil day when the creditors take control of his property" (emphasis added)); *In re Lionel Corp.*, 722 F.2d 1063, 1066, 1070 (2d Cir.1983) (holding that in order to sell the estate's most important asset, the trustee in a Chapter 11 proceeding must demonstrate "some articulated business justification, *other than appeasement of major creditors*" (emphasis added)); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir.1986) (same); *In re Meadowood Club Apts., Ltd.*, 145 B.R. 96, 98 (Bankr.M.D.Fla.1992) (noting that the issue of bad faith often arises when the debtor has a single asset); *In re White Motor Credit Corp.*, 14 B.R. 584, 589–90 (Bankr.N.D.Ohio 1981) (holding that Section 363(b) does not authorize the sale of substantially all of the estate's assets in Chapter 11 reorganization). The parties in the instant case have not argued the issue, and this court is unprepared to hold that Terrace Chalet cannot demonstrate good faith. Therefore, this case is remanded so the bankruptcy court may determine whether Terrace Chalet can satisfy the requirements of Section 1129(b)(2) and consequently, permit Terrace Chalet to sell Camelot Arms free and clear of the Scherers' lien pursuant to Section 363(f)(5).

### III.  *CONCLUSION*

For the reasons set forth above, the bankruptcy court's April 9, 1993 order is vacated and this case is remanded for further consideration consistent with this opinion.