### In re HEALTHCO INTERNATIONAL, INC., Debtor.

### Bankruptcy No. 93–41604–JFQ.

United States Bankruptcy Court, D. Massachusetts.

Nov. 15, 1994.

---

Michael Khoury, Cohn & Kelakos, Boston, MA, for William A. Brandt, Jr., Trustee.

Florence Kessler, Mobile County Attorney's Office, Mobile, AL, for Mobile County, Ala.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Before the court is the chapter 7 Trustee's motion for authority to sell real estate free and clear of all liens, and an objection thereto filed by the Revenue Commissioner of Mobile County, Alabama. For reasons explained below, the County's objection is overruled and, accordingly, the motion is granted.

The Trustee proposes to sell 15,300 square feet of land zoned for light industrial use, and improvements thereon, located at 2960 Mill Street, Mobile, Alabama, for $68,000. The property is subject to three liens. Continental Assurance Company, Inc. holds a first mortgage in the approximate amount of $2,933. There is a blanket second mortgage lien of over $90,000,000 held by various financial institutions, namely, Chemical Bank, the CIT Group/Business Credit, Inc., Van Kampen Merritt Prime Ltd., Nippon Credit Bank Ltd., Union Bank of Finland Ltd., Grand Cayman Brach, SPBC, Inc., the Bank of Tokyo Trust Company, and Morgens, Waterfall, Vintiadis & Co., Inc. (the "Bank Group"). Priming the two mortgages is a property tax lien securing taxes of $952.64 owed Mobile County.

The Trustee proposes to sell the property and distribute the proceeds pursuant to section 724(b) of the Bankruptcy Code, which subordinates tax liens. This means the proceeds would be paid in the following order, with nothing going to Mobile County: (1) the administrative priority claims, and (2) the first and second mortgages. The County objects, contending the sale satisfies none of the requirements of section 363(f) of the Bankruptcy Code, and the sale would deprive the County of its lien without providing adequate protection as required by section 363(e). The County makes no contention that the sales price is less than the property's fair market value.

## I. PERMISSIBILITY OF SALE

Section 363(f) provides:

The trustee may sell property under subsection (b) or (c) of this section free and

clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[1]

■ I construe "money satisfaction of such interest" appearing in subparagraph (f)(5) to mean a payment constituting less than full payment of the underlying debt. Because any lien can always be discharged by full payment of the underlying debt, there would be no sense in subparagraph (f)(5) authorizing a sale only if that could be done.

There is another reason why "money satisfaction of such lien interest" does not mean full payment of the underlying debt. If the phrase means full payment of the debt, subparagraph (f)(3) would then be superfluous. Subparagraph (f)(3) authorizes a sale free of liens if "the price at which such property is sold is greater than the aggregate value of all liens· on such property." Conceivably this could mean the lien values as determined under section 506(a), which for a creditor whose security is completely under water would be zero. But that would make gibberish of (f)(3) because presumably the sales price (particularly if court-approved) is equal to the section 506(a) values, not greater than them. Subparagraph (f)(3) must therefore

refer to the total underlying debt.[2] When (f)(3) is so construed, subparagraph (f)(5) would be repetitious if it required the same payment in full.

I am aware of no procedure under nonbankruptcy law under which a lien holder can be compelled to accept less than full payment in satisfaction of its lien. Under section 1129(b)(2)(A) of the Bankruptcy Code,[3] however, a chapter 11 plan proponent can satisfy a secured claim, over the objection of the claimant, by cash payments having a present value equal to the value of the security interest. Such a "cramdown" proceeding complies with the description of proceedings referred to in subparagraph (f)(5), and many courts have so held.[4]

■ I infer from the words "could be compelled" that (f)(5) requires only that the interest in question be subject to final satisfaction on a hypothetical basis, not that there be an actual payment in satisfaction of the interest from the proceeds of the sale in question. The hypothetical payment referred to means also that a chapter 11 plan cramdown falls within the subparagraph even in a chapter 7 case such as the present case.[5]

Subsection (f)(5) is nevertheless a bit of a conundrum. In opposition to the interpretation I make there, one might contend Congress could not have intended the subparagraph to be conditioned on the existence of a remedy in the Bankruptcy Code which it necessarily knew existed. Also, the referenced "legal or equitable proceeding" is admittedly a rather obtuse way of referring to a bankruptcy remedy. These considerations lose force, however, in light of the wording of subparagraph (f)(1). There the statute expressly refers to "applicable nonbankruptcy

---

1. 11 U.S.C. § 363(f) (1988).

2. *See, e.g., In re Perroncello,* 170 B.R. 189 (Bankr. D.Mass.1994).

3. 11 U.S.C. § 1129(b)(2)(A) (1988).

4. *E.g., In re WPRV–TV, Inc.,* 143 B.R. 315 (D.P.R. 1991); *Scherer v. Federal Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments Ltd.),* 159 B.R. 821 (N.D.Ill.1993); *In re Wing,* 63 B.R. 83 (Bankr. M.D.Fla.1986); *Hunt Energy Co., Inc. v. United States (In re Hunt Energy Co., Inc.),* 48 B.R. 472 (Bankr.N.D.Ohio 1985); *Mutual Life Ins. Co. v.*

*Red Oak Farms, Inc. (In re Red Oak Farms, Inc.),* 36 B.R. 856 (Bankr.W.D.Mo.1984). *See also In re Perroncello,* 170 B.R. 189 (Bankr.D.Mass. 1994) (recognizing relevance of secured claim cramdown under 1129(b)(2)(A) but requiring satisfaction of good faith and nondiscrimination requirements for cramdown).

5. *See In re WPRV–TV, Inc.,* 143 B.R. 315 (D.P.R. 1991) (holding that chapter 11 secured claim in cramdown proceeding satisfies requirement of (f)(5) in a chapter 7 case).

law." If Congress intended (f)(5) to exclude bankruptcy law, Congress would presumably have used the same phrase. It would be anomalous, moreover, if the bankruptcy estate could deal with an undersecured claim under sections 506(a) and 1129(b)(2)(A), or subordinate a tax lien under section 724(b), but be unable to sell the collateral at a fair price without paying the claimant in full.

I therefore disagree with those courts that read subparagraph (f)(5) to require payment in full from the sales proceeds.[6] These courts are not consistent in their interpretation of (f)(5). They believe the subparagraph can have different meanings depending on whether the case is in chapter 7 or chapter 11. Although denying subparagraph (f)(5) authority for the sale in a chapter 7 case, they concede that the policy favoring reorganization presents equitable considerations which justify allowing the sale in chapter 11 even though the price is insufficient to fully pay the underlying debt.[7] This is inconsistent. Section 363 applies in both chapters,[8] and should therefore have the same meaning throughout the Code.

■ There is another reason why subparagraph (f)(5) is satisfied here. The interest in question is a tax lien. Section 724(b), discussed in full below, subordinates tax liens to administrative expense priority debt and liens which are otherwise junior to the tax lien. As shall be seen, the subordination can be a full or partial subordination. That means the County could be compelled to accept a money satisfaction of its interest by payment of less than the full amount of the debt.

I therefore conclude the Trustee may sell the property pursuant to section 363(f)(5), free of the County's lien, with the lien transferred to the sales proceeds. Transfer of the lien to the proceeds provides adequate protection for the lien.[9]

The question remains concerning treatment of the proceeds lien under section 724(b) of the Code. I now turn to that question.

## II. DISTRIBUTION OF THE PROCEEDS

Section 724(b) provides:

Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.[10]

There are no claims here of a type referred to in section 724(b)(1). The County's tax lien is the senior lien. Section 724(b)(2) allows the Trustee to subordinate the tax lien to the administrative expenses to the extent

---

**6.** *See, e.g., Richardson v. Pitt County (In re Stroud Wholesale, Inc.)* 47 B.R. 999 (E.D.N.C.1985); *In re General Bearing Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y.1992).

**7.** *See Stroud*, 47 B.R. at 1002. *See also In re Heine*, 141 B.R. 185 (Bankr.D.S.D.1992) (allowing sale under (f)(5) in chapter 11 case due to

equitable consideration flowing from stipulation signed by parties).

**8.** 11 U.S.C. § 103 (1988).

**9.** 11 U.S.C. § 361(2) (1988).

**10.** 11 U.S.C. § 724(b) (1988).

of the amount of the lien, $952.64. Thus, this amount of administrative expenses will be paid first. Because these expenses exceed the County's allowed tax claim, section 724(b)(3) does not apply. Therefore the County will not be paid next. Instead, the holders of the two mortgages are next paid under section 724(b)(4). The sale proceeds will be insufficient to satisfy both mortgages in full. Therefore the County, whose tax lien would be paid after the mortgages are satisfied pursuant to section 724(b)(5), is not entitled to receive any payment.

The Trustee's motion to sell the assets free and clear of all liens is granted, and the proceeds are to be distributed as set forth above. A separate order has issued.