**In re GRAND SLAM U.S.A., INC., Debtor.**

**Nos. 94–CV–74016–DT, 94–CV–74017–DT. Bankruptcy No. 93–42817–WS.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 31, 1995.

David K. Foust, Asst. Atty. Gen., Detroit, MI, for Dept. of Treasury, Revenue Div., State of Michigan.

Richardo I. Kilpatrick and Karen E. Evangelista, Detroit, MI, for Oakland County.

Kenneth M. Schneider and K. Jin Lim, Detroit, MI, for Paul Borock, Estate Trustee.

*ORDER*

JULIAN ABELE COOK, Jr., Chief Judge.

On March 15, 1993, Grand Slam U.S.A., Inc. (Estate) filed a Petition for Bankruptcy under Chapter 11 with the United States Bankruptcy Court for the Eastern District of Michigan which listed (1) assets (i.e., batting cages, related accessories, and a variety of concession items, such as cash registers, telephone systems, and popcorn makers), all of which were encumbered by liens, including a $7,115.30 lien that was held by Oakland County, Michigan because of unpaid personal property taxes for 1991 and 1992, and (2) administrative expenses that were owing to the United States Trustee's Office and the

State of Michigan in the respective sums of $1,000 and $14,243.36.

On February 11, 1994, the Chapter 11 proceeding was converted by the Bankruptcy Court into a Chapter 7 action. Thereafter, Oakland County filed a motion, in which it sought to vacate the Chapter 11 automatic stay order so that the assets of the Estate could be liquidated and its unpaid tax obligations could be satisfied. Through its Department of Treasury, Revenue Division, the State of Michigan, a creditor of the Estate, objected to the Oakland County's motion. Additionally, the Trustee for the Estate, Paul Borock, responded with his own motion which, if granted, would have authorized him to (1) sell the assets of the Estate free and clear of the Oakland County liens, and (2) transfer this lien interest to the proceeds of the sale.

Both motions were denied and this appeal ensued.[1]

## I.

This appeal concerns the relationship between two sections of the Bankruptcy code; to wit, 11 U.S.C. § 363[2] and 11 U.S.C. § 724.[3] The crux of this controversy lies in the right, if any, of the Estate to sell its assets free and clear of Oakland County's lien under Section 363(f)(5).[4]

1. Borock filed his Notice of Appeal on September 29, 1994. Several days later (October 3, 1994), the State of Michigan Department of Treasury (State) filed its Notice of Appeal on the same issue. On November 13, 1994, this Court entered an order which consolidated these appeals. For purpose of convenience, Borock and the State will be identified as Appellants.

2. Section 363(f) provides as follows:
The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The Appellants claim that Section 724(b)(2) has the effect of (1) extinguishing the lien, and (2) authorizes the trustee of an estate to sell the assets, subject only to the lien interest following the proceeds of the sale.

In its opposition papers, Oakland County maintains that Section 724(b)(2) does not extinguish a creditor's lien on the assets, but merely provides a priority as to the distribution of the proceeds from the sale of the assets.

■ Some courts have interpreted the "money satisfaction" language in Clause (5) of Section 363(f) as requiring full payment to the lien holder. *See, e.g., In re Stroud Wholesale, Inc.,* 47 B.R. 999 (E.D.N.C.1985). Under this interpretation, an asset, which secures a $10,000 debt, could not be sold free and clear by the trustee unless the lien holder is paid the full amount of the obligation. However, this view of Section 363(f)(5) is now thought to be obsolete, inasmuch as it is inconsistent with the Bankruptcy Code.

In *In re WPRV–TV, Inc.,* 143 B.R. 315, 321 (D.P.R.1991), *vacated on other grounds,* 165 B.R. 1 (1992), *rev'd on other grounds,* 983 F.2d 336 (1st Cir.1993), the court declared:

§ 363(f)(5) permits the sale of property free of liens if the lien holder can be

3. Section 724(b) provides in pertinent part that:
Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien . . .

4. The State also contends that the Trustee is authorized to sell the assets free and clear under Section 363(f)(3). However, this issue has not been properly preserved for appeal, inasmuch as it was not submitted to the bankruptcy judge for his consideration.

compelled to accept a money satisfaction. *Stroud* interpreted the money satisfaction requirement as "*full* money satisfaction" in liquidation cases. This interpretation is inconsistent with requirements imposed for money satisfactions in other sections of the Bankruptcy Code.

Two years later, a bankruptcy judge, in *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr.D.Mass.1994), said:

I construe "money satisfaction of such interest" appearing in subparagraph (f)(5) to mean a payment constituting less than full payment of the underlying debt. Because any lien can always be discharged by full payment of the underlying debt[, subparagraph (f)(3),] there would be no sense in subparagraph (f)(5) authorizing a sale only if that could be done.

*See also In re Heine*, 141 B.R. 185, 189–90 (Bankr.D.S.D.1992) (Under Section 363(f)(5), "equitable considerations may allow a court to approve a sale free and clear of liens even though the creditors receive less than full satisfaction of their interests"). An author of a treatise on bankruptcy concurs:

[O]ne is forced to suspect that its meaning is full "money satisfaction".... This is, however, quite inconsistent with the whole concept of sales in the ordinary course of business under subsection (c) to which subsection (f) expressly refers. The former would be of little use if every time an item of inventory is to be sold it must be for an amount in excess of all debt which it secures. It is to be doubted whether the drafters of the Code intended any such result.

2 COLLIER ON BANKRUPTCY ¶ 363.07 (15th ed. 1994).

Thus, it is clear that Section 363(f)(5) allows trustees of an estate to sell property free and clear of liens when "a legal or equitable proceeding" exists that will force the lien holder to accept less than full money satisfaction for their interest.[5]

▪ Thus, the focus of the inquiry by this Court must now turn to determine whether such a legal proceeding exists. A typical legal proceeding which compels a creditor to receive less than full money satisfaction is a procedure, commonly known as "cram down," that is applicable to Chapter 11 cases. Under Section 1129(b)(2)(A) of the Bankruptcy Code, "a [C]hapter 11 plan proponent can satisfy a secured claim, over the objection of the claimant, by cash payments having a present value equal to the value of the security interest." *In re Healthco Int'l, Inc.*, 174 B.R. at 176; *see also In re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821 (N.D.Ill.1993) ("cram downs" are legal proceedings within the meaning of Section 363(f)(5)); *In re WPRV–TV, Inc.*, 143 B.R. 315 (same). Thus, in a "cram down" procedure, a trustee may sell the assets of an estate free and clear, without the consent of a secured creditor, if present or future payments are made to the secured creditor in an amount equal to the present value of the collateral, even if such value is less than the debt.

Section 724(b) provides in pertinent part that:

Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien ...[6]

Section 507(a)(1) states as follows:

The following expenses and claims have priority in the following order:

---

**5.** The bankruptcy judge, who presided over the instant matter, adopted this view when he declared "that § 363(f)(5) requires that the Court be able to compel the creditors to accept less than full payment." *See* Opinion at 463.

**6.** All parties agree that clause (2) of this Section is relevant to this appeal. Hence, the breadth of clause (1) has not been discussed.

(1) First, administrative expenses allowed under section 503(b) of this title . . .

Section 503(b)(1)(A) allows "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . . ." *Id.*

It is not disputed that the Appellants' expenses are administrative expenses within the meaning of Sections 503(b), 507(a)(1) and 724(b)(2). Thus, it is clear that Oakland County's lien interest is subordinated to the Appellants' administrative expenses under Section 724(b)(2).

Like "cram downs" in Chapter 11 cases, Section 724(b) compels lien creditors in appropriate cases to accept a money satisfaction of their interests by the payment of less than the full amount of the debt. It does so by subordinating tax liens to administrative expenses. If the liquidated value of the estate's assets equals or exceeds administrative expenses and lien interests, then the Section 724(b)(2) subordination is immaterial because there is enough money in the estate to discharge both types of the indebtedness. However, if the liquidated value of the estate is less than the administrative expenses and the lien interests burden the estate, the lien holders can only hope to recover after all of the legitimate administrative expenses have been satisfied.[7] Thus, to that extent, Section 724(b)(2) compels lien holders to receive a partial payment for their interest.[8]

However, in the now-challenged view of the bankruptcy court, such a subordination does not compel a finding that Section 724(b)(2) is a legal proceeding within the meaning of Section 363(f)(5):

> The purpose of § 363(f) is to determine what constitutes property of the estate. . . . On its face a § 363(f) analysis to determine what constitutes property of the estate necessarily precedes any analysis pursuant to § 724, which dictates the priority of distribution of the property of the estate once it is collected.

> . . . . .

> The possibility of the ultimate receipt by a subordinated creditor under § 724, at the end of a case, of a distribution of less than 100 percent of its claim is not tantamount to compelling that creditor in a legal or equitable proceeding to accept the money satisfaction of its interest, within the sense of the meaning of that requirement in § 363(f)(5). The "legal or equitable" proceeding referred to in § 363(f)(5) is *not* the subordination process referred to in § 724.

Opinion at 461, 461–62. Thus, in the view of the lower court, Section 363(f) establishes the right of a trustee to sell property free and clear of liens. Once the property is sold in accordance to Section 363(f), § 724(b) comes into play to determine the "distribution" of the proceeds from such a sale.

In the judgment of this Court, the position of the bankruptcy court with regard to the interaction between Sections § 363(f)(5) and § 724(b)(2) is too rigid, in that it yields to

---

7. To use the bankruptcy judge's example, if the property is subject to a lien for $100 and there are $20 worth of priority administrative expenses under § 724(b)(2), the lien holder can only expect to receive $80 in satisfaction of the debt.

8. The Sixth Circuit Court of Appeals has explained that the purpose of this Section is to ensure payment of the administrative expenses, inasmuch as the administration of a bankruptcy estate is vital to the maximization of creditor recovery:

> Section 724(b) was derived from § 67(c) of the Chandler Act of 1938. . . . What § 67 did accomplish was the subordination of certain statutory liens to certain administrative expenses. This subordination of certain liens to such legislatively-determined "priorities" was a new

concept in bankruptcy law. Congress revised the Act in 1966 . . . leaving intact the prevailing rule that priority of statutory liens should be determined under the applicable nonbankruptcy law. . . . *See generally California State Dep't of Employment v. United States,* 210 F.2d 242, 244 (9th Cir.1954) ("[t]he sole concern of Congress in enacting § 67, sub. c was to insure payment of administrative expenses and small wage claims [ahead of certain lien claims]").

> . . . .

> In 1978, Congress again substantially revised the Bankruptcy Code. The prior § 67(c)(3) was renumbered as § 724(b) and, although altered in certain respects, was "derived from § 67(c)(3) of the Bankruptcy Act . . . without substantial modification in result."

*In re Darnell,* 834 F.2d 1263, 1266 (6th Cir. 1987).

form over substance. Although Section 724(b)(2) contains "distribution" language, its operation falls squarely within the language of Section 363(f)(5), inasmuch as it creates a mechanism by which lien creditors are compelled to receive less than full payment for their interest. Thus, the subordination provision within this Section is as much "a legal ... proceeding [that forces the lien holder] to accept a money satisfaction of such interest" as is the "cram down" provision of Section 1129(b)(2)(A). *Accord In re Healthco Int'l, Inc.*, 174 B.R. at 176 (§ 363(f)(5) met by operation of § 724(b)); *In re AG Van Metre, Jr., Inc.*, 155 B.R. 118 (Bankr.E.D.Va.1993), *aff'd without opinion*, 16 F.3d 414 (4th Cir. 1994) ("It would be illogical to require full satisfaction of statutory tax liens as a condition to the approval of sale pursuant to § 363(f)(3) (sic) when § 724(b) explicitly provides otherwise").[9]

Moreover, this Court believes that the contested decision of the bankruptcy court takes the "teeth" out of Section 724(b)(2), as it would enable lien holders to frustrate the Congressional design of ensuring the payment of administrative expenses. Indeed, under the analysis by the bankruptcy court, the payment of administrative expenses could become erratic and provide a lien holder, who does not fare well under the law, with an opportunity to block the activities of a trustee that are necessary for the liquidity of an estate. Having granted administrative expenses a level of priority over lien interests, Congress could not have intended that the payment of administrative expenses be subject to the will of the subordinate lien holders.

## II.

Based on the foregoing, the decision of the bankruptcy court is vacated and the case is remanded for further proceedings in accordance with this opinion.

IT IS SO ORDERED.

---

**9.** It should be noted that in cases where the payment in satisfaction is a future payment, the transfer of the lien to the proceeds provides adequate protection for the lien holder. 11 U.S.C. § 361(2).