**In re Nicholas P. OGLESBY, Holly G. Oglesby, Debtors.**

**In re FAIRLINGTON SHELL SERVICES, INC., Debtor.**

**Bankruptcy Nos. 92–13031–T, 93–15224–M.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 29, 1996.

H. Jason Gold, Daniel C. Stanley, Jr., Howard I. Rubin, Gold & Stanley, P.C., Alexandria, Virginia, for Trustee.

D. Brian Costello, Costello & Hubacher, Alexandria, Virginia, for City of Alexandria.

Phillip G. Sunderland, City Attorney, Alexandria, Virginia, for City of Alexandria, VA.

John T. Donelan, Alexandria, Virginia, for Debtor Nicholas P. Oglesby.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On June 7, 1995, this court entered an order of administrative insolvency in these consolidated chapter 7 cases. The cases are now before the court on motion of the trustee in bankruptcy to require the City of Alexandria, Virginia, to disgorge and repay to the trustee the sum of $63,373.19.[1] The sum sought by the trustee represents a payment of delinquent real estate taxes to the city out of the proceeds of the trustee's sale of real property which was approved by the court on July 5, 1994.

### Findings of Fact [2]

Nicholas P. Oglesby and Holly G. Oglesby, husband and wife, filed a joint petition under Chapter 11 of the Bankruptcy Code on June

---

1. The parties have consented to the court's treatment of the trustee's motion as a contested matter rather than as an adversary proceeding.

2. The court's findings incorporate all relevant documents from the court's file which involve the trustee's sale in question and the resolution of the city's objection.

17, 1992. Their case was converted to a chapter 7 case on December 1, 1993.

The debtor corporation owned and operated by the Oglesbys, Fairlington Shell Services, Inc., filed its chapter 11 petition on December 17, 1993, and converted to chapter 7 on October 13, 1994.

The two chapter 7 cases have been jointly administered. H. Jason Gold serves as trustee in bankruptcy.

The Oglesbys owned real property located in the City of Alexandria, Virginia, which was the business premises of debtor Fairlington Shell. The city filed a secured proof of claim for unpaid real estate taxes due on this property in the amount of $63,544.00.

The trustee contracted to sell the Oglesby's real property along with personal property on the premises and on April 14, 1994, moved the court for approval of the sale. The contract provided for a purchase price of $1,400,000.00, to be allocated as $1,250,000.00 for the real property and $150,000.00 for the personalty.

On May 4, 1994, the city filed an objection to the sale on the grounds that it was a secured creditor to the extent of its real estate tax claim; that its security interest had priority over all other liens and encumbrances pursuant to section 58.1–3340 of the Code of Virginia (1950), as amended; and that no provision was made in the trustee's motion for the payment of delinquent taxes according to the statutory priority.

Counsel for the trustee and the city entered into negotiations to settle the dispute. The trustee represented to the city that all liens would be paid in full from the proceeds of sale, including the city's real estate tax lien, because the proceeds of sale of the real estate were sufficient to do so.

On June 14, 1994, this court entered a consent order which withdrew the city's objection. The order provided that unpaid real estate taxes in the amount of $63,544.00 constituted a lien on the property which would be paid from the proceeds of sale "in accordance with 11 U.S.C. § 724(b)." The consent order also provided that the city's other tax claims "shall be treated as unsecured priority claims pursuant to 11 U.S.C. § 507."

On July 5, 1994, this court entered an order approving the sale of the property and authorizing the trustee to pay any liens and encumbrances of record not objected to by the trustee within ten days of closing. Notice of the trustee's motion to approve sale was provided to the United States Trustee's representative and to all creditors.

Due to delays caused by the purchaser, closing on the sale of the property did not occur until October 28, 1994. On that date the trustee paid the amount of $65,373.19 to the city from the closing on the sale of the property; this amount represented the city's lien for delinquent property taxes.

On November 1, 1994, the trustee paid $143,717.08 to Jerome Golub and Raymond Lassen, who held a first priority deed of trust on the property and $213,190.17 to Green Acres Investments, holders of a second priority deed of trust on the property. On November 1, 1994, the trustee paid a broker's commission in the amount of $84,000.00 to the trustee's court approved broker, representing 6% of the total sales price. The amount of $75,000.00 of the commission was attributable to the sale of real property based on the contract distribution of proceeds.

On November 16, 1994, the trustee filed an objection to the claim of the Ralph D. Kaiser Company, Inc. ("Kaiser"), holder of a third and fourth priority deed of trust on the property as well as a security interest in the personal property. The objection was based on Kaiser's assessment of various fees and charges asserted after the closing of the sale as part of its secured claim. On December 8, 1994, this court entered a consent order authorizing the trustee to make a partial payment to Kaiser in the amount of $630,000.00. On April 19, 1995, this court entered a settlement order authorizing the trustee to pay an additional $211,000.00 to Kaiser in "full and final satisfaction of all claims of Kaiser against the bankruptcy estate."

Subsequent to the distribution of the proceeds of sale, the trustee determined that there is an administrative insolvency in this bankruptcy estate, and on June 7, 1995, this court entered an order of administrative in-

solvency in this case. The administrative claims entitled to priority exceed $65,373.19.

*Position of Parties*

The trustee requests the court to require the City of Alexandria to disgorge $63,373.19 of the tax payment and remit this sum to the trustee to be used to pay priority claims.[3] He asserts that Bankruptcy Code § 724(b) gives a priority to the administrative claims over the city's real estate tax claims and therefore requires the city to return the tax payment. *See King v. Board of Supervisors (In re A.G. Van Metre, Jr., Inc.),* 155 B.R. 118 (Bankr.E.D.Va.1993), *aff'd,* 16 F.3d 414 (4th Cir.1994). The consent order resolving the city's objection to the sale stated that the city's tax lien would be paid from the sale proceeds "in accordance with 11 U.S.C. § 724(b)."

Counsel for the city argues that the settlement between the city and the trustee whereby the city withdrew its objection to the trustee's proposed sale constituted a contract still binding on the trustee and that the trustee is equitably estopped at this late date from requiring a return of the tax payment.

In support of this position the city relies upon *Vick v. Federal Land Bank (In re Vick),* 75 B.R. 248 (Bankr.E.D.Va.1987).

*Discussion And Conclusions*

In these consolidated chapter 7 cases, the trustee in bankruptcy sold real and personal property of the debtor Fairlington Shell under this court's order of July 14, 1994, pursuant to 11 U.S.C. § 363(f). The sale price was $1,400,000.00 of which $1,250,000.00 was for the realty and the balance for personalty. The City of Alexandria, which held real estate tax liens against the property, had originally objected to the trustee's motion to sell free of liens. However, by a consent order entered June 14, 1994, the city withdrew its objection based upon the trustee's representation that the tax liens would be paid in full from the sale proceeds. This order provided that the city's tax liens would be paid from the sale proceeds "in accordance with 11 U.S.C. § 724(b)."

After the sale the trustee made the following payments of secured claims against the real property:

| Date | Purpose | Amount |
| --- | --- | --- |
| October 28, 1994 | City real estate taxes | $ 65,373.19 |
| November 1, 1994 | First deed of trust | 143,717.08 |
| November 16, 1994 | Second deed of trust | 213,190.17 |
| December 8, 1994 | Third, Fourth deeds of trust | 630,000.00 |
| April 19, 1995 | Third, Fourth deeds of trust | 211,000.00 |
| | Total Liens Paid | $1,263,280.44 |

In addition to the liens, the trustee paid a real estate commission of $74,000.00 at the time of sale. As a result of these expenditures, the bankruptcy estate has suffered a loss on the sale of $87,280.44 ($1,250,000.00— $1,337,280.44).

The trustee has now completed his liquidation of the bankruptcy estate and is faced with a substantial shortfall of funds to pay priority administrative claims. It is undisputed that the administrative claims against the estate exceed the tax payment to the city by an amount in excess of $65,373.19. No

doubt the shortage is due in large part to the deficit from the sale of realty.

The trustee has stated that he reasonably believed at the time he settled the city's objection to sale and paid the tax liens there would be sufficient proceeds to fully pay the tax liens and deeds of trust against the realty. The city argues that the trustee was negligent in representing that the sale proceeds were sufficient to pay the tax liens. However, other than the mere fact of the shortage, no evidence has been presented of

3. The trustee seeks all but $2,000.00 of the tax payment to the city. Apparently, this amount represents payment of personal property tax.

the trustee's negligence.[4] For purposes of the instant ruling, I accept the trustee's assertion that he believed there would be sufficient funds to pay all claims against the realty when payment was made to the city and find no basis to determine that the trustee was negligent.

The dispute here requires the court to consider the relationship between two seemingly inconsistent Bankruptcy Code provisions, § 363(f) and § 724(b).

### Section 363(f)

Pursuant to § 363(f), a trustee may sell a bankruptcy estate asset free of liens "only if—"

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

After the trustee in this case had given notice of the proposed sale, the city filed an objection which objection was withdrawn only after assurances from the trustee that the sale proceeds were adequate to pay the tax liens. The court's order of July 5, 1994, authorized sale under § 363(f). At that time, it appeared that the sale would qualify under either § 363(f)(2) or (f)(3). The city's consent was, of course, premised on its belief that the tax lien would be paid. It can now be seen that on its face the sale does not qualify under § 363(f)(3) because the sale price was not greater than the aggregate liens on the property.[5]

---

**4.** The shortage appears to have been caused by the amount necessary to satisfy the holder of the third and fourth deeds of trust; the amount of these claims was disputed and ultimately required a larger payment than had been anticipated.

**5.** I find it unnecessary here to consider the meaning of the phrase, "... greater than the

### Section 724(b)

Section 724(b) provides a complicated rule which subordinates a secured tax claimant's right to distribution of property of the estate to the rights of the holder of claims entitled to priority under 11 U.S.C. § 507(a)(1)–(7). *See* 11 U.S.C. § 724(b)(1)–(7). Section 724(b) provides that property (or its proceeds) encumbered by a tax lien *shall* be distributed in the following manner:

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7), of this title, *to the extent of the amount of such allowed tax claim that is secured by such tax lien;*

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

11 U.S.C. § 724(b) (emphasis added)

■ The application of these provisions subordinates payment of statutory tax liens to the payment of administrative expenses and some priority claims (up to the amount of the tax liens) while leaving senior and junior consensual lienholders undisturbed. *A.G. Van Metre, Jr., Inc.*, 155 B.R. at 121–22. Although these rules are difficult to concep-

---

aggregate value of all liens on such property" contained in § 363(f)(3). There is a split of authority on whether this language allows for a sale of property where the sale price is less than the total amount owed on all liens and other interests. *See In re Collins*, 180 B.R. 447, 450–51 (Bankr.E.D.Va.1995).

tualize they are relatively simple to apply as revealed by the court's calculation below. *See A.G. Van Metre, Jr., Inc.*, 155 B.R. at 121–22.

■ It can be seen that § 363(f) and § 724(b) provide somewhat conflicting results. In a sale context, § 363(f) retains the priority of tax liens on the property; however § 724(b) subordinates the tax liens to administrative expenses of the bankruptcy. Recent decisions effectively hold that § 724(b) trumps § 363(f) in a chapter 7 case; where a trustee's sale qualifies under § 363(f), tax liens are nevertheless subordinated to the extent allowed by § 724(b). *In re Grand Slam U.S.A., Inc.*, 178 B.R. 460 (E.D.Mich.1995); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855 (Bankr.D.N.J.1994); *In re Healthco Int'l, Inc.*, 174 B.R. 174 (Bankr.D.Mass.1994); *Wurst v. City of New York (In re Packard Properties, Ltd.)*, 112 B.R. 154 (Bankr. N.D.Tex.1990).

*Equitable Estoppel*

■ The city relies upon the case of *In re Vick*, 75 B.R. at 248, as authority for this court to deny the relief sought by the trustee. In *Vick*, a chapter 13 trustee sought a refund of overpayments to three secured creditors over the five year life of a chapter 13 plan. The trustee erroneously made double payments to the creditors, each of whom had held a deed of trust against the debtor's residence. Based in part upon amounts received from the trustee, the creditors had released their deeds of trust when the debtor sold the realty. Bankruptcy Judge Hal J. Bonney, Jr., denied the trustee's refund request based upon the doctrine of equitable estoppel. *See Barry v. Donnelly*, 781 F.2d 1040, 1042 (4th Cir.1986); *U.S. v. Fidelity & Casualty Co.*, 402 F.2d 893, 897 (4th Cir. 1968); *United States v. Wood*, 99 F.2d 80, 82 (4th Cir.1938). As applied in these Fourth Circuit decisions, the doctrine may be invoked where a party makes a representation on which another party relies to that party's detriment. The representation need not be fraudulent or deceptive.

To establish equitable estoppel it is not necessary that actual fraud be shown. It is only necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice.

*Wood*, 99 F.2d at 82. *See also Beneficial Fin. Co. v. Lazrovitch*, 47 B.R. 358, 363 (E.D.Va.1983).

*Conclusion*

■ The facts here seem to present a puzzle for which there is no truly satisfactory solution. The trustee's sale of the subject real property pursuant to § 363(f)(3) may now be seen as improvident because the sale price was *not* greater than the aggregate value of the liens on the property as § 363(f)(3) requires. The difficulty is magnified by the fact that the city had initially objected to the sale and only consented upon the trustee's assurance that the sale qualified under § 363(f)(3) and that the taxes would be paid.[6]

The equities might seem to favor the city's position. However, rather than resorting to a purely equitable solution, I believe that a more rational resolution would be one in which the court's equitable powers are used to satisfy specific provisions of the Bankruptcy Code, namely §§ 363(f) and 724(b). This might be accomplished by the court restructuring the distribution of sale proceeds in light of what has transpired. For a similar approach in which this court invoked the equitable powers of § 105(a) to restructure an earlier sale, see *In re Harold & Williams Dev. Co.*, 163 B.R. 77, 80–81 (Bankr.E.D.Va. 1994).[7]

---

**6.** As stated previously, the consent order submitted by the trustee and the city when the city withdrew its objection did provide that the tax liens would be paid in accordance with § 724(b).

**7.** The court in *Harold & Williams Dev. Co.* stated: Section 105(a) authorizes the bankruptcy court to issue orders necessary to carry out the provisions of the Bankruptcy Code. This authority does not act in a vacuum, however, but

generally must be grounded upon other provisions of law. *See, e.g., IRS v. Levy (In re Landbank Equity Corp.)*, 973 F.2d 265, 271 (4th Cir.1992) (court's equitable powers do not constitute unlimited authority to ignore plain statutory requirements or alter substantive rights). In other words the exercise of § 105(a) power should be used to achieve ends provided for by the Code itself or otherwise by law.

*Harold & Williams Dev. Co.*, 163 B.R. at 80.

■ There is no question that the court can require a party to disgorge payments received from a bankruptcy estate which in hindsight were made in contravention of the order of distribution required by the Bankruptcy Code. *See Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan Elec. Supply Corp.)*, 185 B.R. 505 (Bankr.E.D.Va.1995); *Harold & Williams Dev. Co.*, 163 B.R. at 80–81; 11 U.S.C. § 542.

In restructuring the trustee's sale, the court must determine whether a sale free of liens could have been ordered over the city's objection under any provision of § 363(f). In this regard consideration will be given to section 363(f)(5), which allows sale free of a lien where the holder of the lien could be compelled to accept a money satisfaction in a legal or equitable proceeding.

There is some ambiguity in the language of § 363(f)(5). The principal issues which have revolved around this section include the nature of the legal or equitable proceeding that the court may consider and whether the "money satisfaction" provision requires full or even partial payment of the liens from the proceeds of sale.

Recent decisions have tended to give § 363(f)(5) a rather broad scope by holding that payment of a lien is not necessarily required by this provision; moreover, the cases have held that both a "cram down" as allowed in a chapter 11 case and a subordination of tax liens pursuant to § 724(b) in a chapter 7 case are "legal and equitable" proceedings which may be invoked under § 363(f)(5) to authorize sale free of a lien. *Grand Slam U.S.A., Inc.*, 178 B.R. at 461–64; *Scherer v. Fed. Nat'l. Mortgage Ass'n. (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 829 (N.D.Ill.1993); *Tabone, Inc.*, 175 B.R. at 861–62; *Healthco Int'l, Inc.*, 174 B.R. at 176–78; *Wurst*, 112 B.R. at 156–57.

In *Grand Slam U.S.A., Inc.*, 178 B.R. at 461–64, the district court reversed a bankruptcy court decision that § 724(b) comes into play for distribution purposes only after a sale qualifies under § 363(f)(5). Rather, the district court held, § 363(f)(5) allows the bankruptcy trustee to sell free of tax liens where a "legal or equitable proceeding" exists which forces the lienholder to accept less than full payment and that in a chapter 7 case, § 724(b) provides such a proceeding. 178 B.R. at 461–64.

■ I conclude from the cited authorities that if all the facts had been known this court could and would have considered the effect of § 724(b) on § 363(f)(5) at the time the trustee sold the subject realty and, if otherwise appropriate, ordered the sale over the objection of the City of Alexandria without requiring the trustee to pay the tax liens.

■ Moreover, I find the court may consider these provisions today and restructure the sale accordingly so that the trustee in bankruptcy may conclude his administration of the estate. The redistribution of sale proceeds pursuant to § 724(b) is demonstrated as follows:

| Restructured Distribution of Proceeds of Sale | | Balance |
|---|---|---|
| Proceeds (less commission) | | $1,176,000.00 |
| (1) payment of senior consensual lienholders.[8] | —($0.00) | |
| | | $1,176,000.00 |
| (2) payment of claims entitled to priority § 507(a)(1)–(7) to the extent of the allowed amount of the secured statutory tax lien. | —($65,373.19) | |

8. In Virginia, real estate tax liens have priority status over deeds of trust. Section 58.1–3340 of the Virginia Code states:

There shall be a lien on real estate for the payment of taxes and levies assessed thereon prior to any other lien or encumbrance. The lien shall continue to be such prior lien until actual payment shall have been made to the proper office of the taxing authority. . . .
Va.Code Ann. § 58.1–3340 (Michie 1995).
Accordingly, there would be no distribution in this case under § 724(b)(1) since under Virginia law no liens are "senior to such tax lien."

$1,110,626.81

| | | | |
|---|---|---|---|
| (3) | payment of City of Alexandria statutory tax liens to the extent they exceed priority claims paid in (ii). | —($0.00) | |
| | | | $1,110,626.81 |
| (4) | payment of deeds of trust (junior consensual liens). | —($1,197,-907.25) | |
| | | | $( 87,280.44) (deficit) |
| (5) | payment of City of Alexandria secured statutory tax liens to the extent not paid in (iii). | —($0.00) | |
| (6) | remainder to the estate. | | $ —0— 9 |

---

*See* 11 U.S.C. § 724(b).

The court's restructuring of the trustee's sale demonstrates that after subordinating the tax liens as allowed under § 724(b)(2) there would have been no funds available to pay the city's tax liens. Accordingly, the court could have ordered the sale over objection of the City of Alexandria. It is therefore appropriate for the court to require the city to disgorge the sum of $63,373.19 and remit this sum to the trustee. Although it is somewhat regrettable to require the city to repay the taxes at this late date, the bankruptcy code rather clearly requires this result. Having reached this result, I find no basis to invoke the doctrine of equitable estoppel as urged by the city.

A separate order will be entered.

9. The gross sale proceeds of $1,250,000.00 are reduced by the broker's commission of $74,-000.00; the commission is allowable prior to liens as an administrative expense of preserving or disposing of the property pursuant to Code Section 506(c). Of course, there is a chance the *court would not* have approved the sale had all facts been known at the time since there was no benefit to the estate. As demonstrated above there is a deficit from the trustee's sale of the instant realty in the amount of $87,280.44. Even when the city returns the amount sought by the trustee of $63,373.19, there still remains a deficit of $22,907.25 which is the payment received by the third and fourth deed of trust holder in excess of the amount of the holder's liens.